IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOSEPH W. FENNELL, | CIVIL ACTION 4:09-03051-JFA-TER |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Joseph W. Fennell, filed applications for DIB and SSI on April 12, 2005, alleging inability to work since December 31, 2001, due to post-traumatic stress disorder (PTSD), bipolar disorder, and alcoholism. His applications were denied at all administrative levels, and upon reconsideration. A hearing was held before the Administrative Law Judge ("ALJ") on April 19,

2007. The plaintiff was present and gave testimony. The plaintiff, through counsel, amended his alleged onset date of disability to July 31, 2004, the date he last worked. The ALJ issued an unfavorable decision on June 20, 2007, finding plaintiff was not disabled. In the decision of June 20, 2007, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since July 31, 2004, the amended alleged onset date. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments; history of alcohol abuse, a major depressive disorder, and mild spondylosis of the lumbosacral spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).[1]

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to stand, sit and walk six hours each in an eight-hour workday, to frequently lift and carry 25 pounds with a heaviest weight lifted occasionally of 50 pounds, and to frequently bend and stoop.

6. The claimant is capable of performing past relevant work as a retail receiving clerk/stocker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565 and 416.965). [2]

---

[1] In the decision, this finding was incorrectly numbered as #3.

[2] In the decision, this finding was incorrectly numbered as #4.

> 7. The claimant has not been under a disability as defined in the Social Security Act, from December 31, 2001, through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).[3]

(Tr. 11-22).

Plaintiff filed a timely request for review of the hearing decision. The Appeals Council denied the request on September 18, 2009, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 3-6). The plaintiff now brings this action asserting the ALJ committed reversible error by:

1. Performing an improper listing analysis.

2. Failing to consider the combined effect of Mr. Fennell's multiple severe impairments, and

3. Performing a flawed credibility analysis.

(Plaintiff's memorandum).

## II. DISABILITY ANALYSIS

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d

---

[3] In the decision, this finding was incorrectly numbered as #5.

802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### III. FACTUAL BACKGROUND

The plaintiff was born on October 19, 1948, and was 58 years old on the date of the hearing before the ALJ. (Tr. 991). Plaintiff has a high school education and past work experience in retail sales, manufacturing, and distributing.

Plaintiff, defendant and the ALJ set out the medical evidence in this case in great detail in their briefs and decision. The medical records pertaining to the time period after July 31, 2004, the amended onset date, will be discussed below as set out in plaintiff's brief.

For background information, plaintiff reported thoughts and dreams about his military experience in Vietnam and had been admitted to the VA in June 2003 where he was assessed with suffering from a recurrent depressive disorder and post traumatic stress disorder (PTSD). Plaintiff continued to receive treatment from the VA. Plaintiff presented to the VA hospital again in August of 2004 suffering from depression, suicidal ideation and alcohol dependence (Tr. 292). He reported planning to kill himself by jumping from a bridge (Tr. 496). He was admitted for "crisis stabilization and detox from alcohol" (Tr. 498). Notes show that plaintiff's main issue was thought to be "ineffective coping." (Tr. 509). It was noted during his admission that plaintiff had been through SATC three times and was not interested in participating again. (Tr. 515). He reported joint pain that worsened throughout the day. (Tr. 519). He was discharged on August 19, 2004 and was reported to be looking forward to returning to his job at Goodwill. (Tr. 525).

At a follow-up visit on October 26, 2004, plaintiff reported feeling "up and down." He declined to begin taking Antabuse. (Tr. 535). He stated that he planned never to live alone again as this is what precipitated his relapse. (Tr. 534). His past medical history was noted to be significant for degenerative joint disease. His insight into his illness was described as "poor" with mood swings attributed primarily to withdrawal and cravings. (Tr. 537-538). Plaintiff continued to report depression, problems with sleep, nightmares and social withdrawal. (Tr. 539). It was also noted that he had problems recalling the events of the past year. He was referred for neuropsychology testing for his memory problem. (Tr. 544). Laboratory results dated November 29 indicated that plaintiff

6

continued to consume alcohol. (Tr. 543). Plaintiff was seen on December 3, 2004, accompanied by his sisters. (Tr. 545). They reported extended periods of depression, mood swings, irritability, anger and reclusiveness. Plaintiff did not feel at that time that Wellbutrin was helping him. He was cautiously assessed at that point as suffering from unipolar depression with impulsive anger. On December 21, plaintiff presented with chronic bilateral lower extremity pain and reported difficulty standing or walking for long periods of time. (Tr. 550). Radiology revealed diffusely calcified abdominal aorta and anterior osteophytes of the L3, L4 and L5 vertebral bodies with no significant disc space narrowing. (Tr. 554).

In early 2005, plaintiff continued to report depressive thoughts, but felt that Prozac was helpful. He reported realistic dreams that woke him up nearly every night. (Tr. 576). Plaintiff was again admitted for alcohol detox from March 28, 2005 to April 1, 2005. (Tr. 558). He was started on Prazosin to abate his "nightmares and weird dreams." Plaintiff admitted during his admission that he had been kicked out by his sister and brother-in-law with whom he had been living. (Tr. 591). Plaintiff reported voices and visions. (Tr. 630).

Plaintiff was discharged on April 1, 2005 to McCloud Manor awaiting a place in a rehabilitation clinic in Charlotte, North Carolina. Plaintiff's depression persisted throughout April. He was attending Alcoholics Anonymous (AA) meetings. (Tr. 658-659). Plaintiff completed Social Security paperwork with assistance from VA staff who noted that he seemed "unable to handle the paperwork alone." (Tr. 664). Plaintiff continued to be stable through May. On May 16, 2005, he complained of arthritic pain in his knee. (Tr. 673). He completed a computer skills course at this time as well. Plaintiff continued to suffer from pain in his lower back, legs, ankles and right elbow. (Tr. 677). He was scheduled for evaluation of his pain to determine whether it was caused by

radiculopathy or neuropathy related to his history of alcohol abuse. (Tr. 683). On June 29, staff notes reflect that plaintiff was still suffering from recurrent nightmares and sleep disturbance and noted that he "does best when living structured environments such as residential care facilities and has not been able to live independently for several years now." (Tr. 693). On July 1, plaintiff was complaining of numbness in his legs. He was issued a walking cane. (Tr. 699). At an EMG consult on August 2, 2005, plaintiff described burning and aching in the lower extremities, aggravated by walking and worsening at night. (Tr. 707). Exam revealed moderately severe bilateral varicose veins but no evidence of compression neuropathy or sensory or motor peripheral neuropathy.

On November 13, 2005, plaintiff was admitted at Roper St. Francis Hospital with multiple abrasions from a recent fall. (Tr. 729). He starting having autonomic instability with an EKG showing tachycardia. He arrived at the VA where he had a seizure and was in full-blown delirium tremens (Dts). He was observed to be agitated, pulling at his IV sites, pulling at the air and in an altered mental state. (Tr. 731). He was placed in a posse vest for safety. (Tr. 732). On November 15, plaintiff was still disoriented as to time, place and person. (Tr. 755). He believed that he was on a ship and was doing laundry. He continued to be disoriented. He was described as smiling and cordial which was incongruent with his situation. He told staff that he was in South Vietnam. (Tr. 792-793). Plaintiff was found by staff to be trying to crawl over the railing of his bed and experienced a period of visual hallucinations. (Tr. 794). He was still in tachycardia, but less so than at admission. On November 17, he was unable to open his eyes, or participate in discharge planning. (Tr. 797). Plaintiff returned to his baseline mental status on November 21 and was discharged on November 22. (Tr. 805).

In January of 2006, plaintiff reported for his annual physical complaining of constant leg and back pain. (Tr. 873). On November 27, 2006, plaintiff called VA staff with concern that his left foot had been swollen for several days. He presented with swelling around the ankles with pain and redness. (Tr. 865-866). He reported that this abated at night, but worsened throughout the day. Plaintiff said that his legs occasionally give out when he walks. He called back several days later to say that the swelling in his ankles had gone down but that they were still tender. (Tr. 863). On December 11, 2006, plaintiff called the VA again complaining of pain in his toes lasting several days. (Tr. 861). He completed a course of antibiotics, but the swelling and redness in his feet continued intermittently. Several weeks later in January of 2007, plaintiff reported for his annual exam still reporting foot pain, but without swelling. (Tr. 854). Examination on March 5 revealed that plaintiff's dorsalis pedis signals were abnormal. (Tr. 849).

## IV. ARGUMENTS

Plaintiff argues the ALJ failed to evaluate the combined effect of his impairments. Plaintiff asserts the ALJ failed to adequately explain his evaluation of the combined effects of his depression, PTSD, and spondylosis of the lumbrosacral spine as required under Walker v. Bowen, 889 F.2d 47, 50(4th Cir. 1989). Plaintiff also asserts that the ALJ committed legal error when he considered plaintiff's struggles with alcoholism at each step of his determination instead of first determining if plaintiff was disabled and then weigh the impact of addiction upon the alleged disability.

The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock, 483 F.2d at 775. In order for a reviewing court to

determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination ...." Green v. Chater, 1995 U.S.App. LEXIS 21970, *7, 1995 WL 478032 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)).

In Walker, the Fourth Circuit remanded plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. See Walker, 889 F.2d at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. See Id. The ALJ found that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4 . Walker, 889 F.2d at 49. The Fourth Circuit held that the ALJ failed to adequately consider and explain his finding because he did not analyze or explain his evaluation of the cumulative effect of the claimant's impairments. See Id. at 49-50. Similarly, the ALJ in this action failed to adequately explain his evaluation of the combined effects of plaintiff's impairments, particularly with respect to his determination of whether the plaintiff's impairments or combination of impairments met a listing. As in Walker, the ALJ in this action found that plaintiff suffers from several severe impairments, including a major depressive disorder, mild spondylosis of the lumbrosacral spine, and a history of alcohol abuse. (Tr. 13). The ALJ also found plaintiff did not have an impairment or combination of impairments that meets or medically equals

10

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . (Tr. 14). The ALJ gives no indication of whether he considered the cumulative effect of plaintiff's impairments. Even if one could infer that the ALJ considered the cumulative effect of all of plaintiff's impairments from the ALJ's listing of various medical observations in his analysis of the plaintiff's RFC, the ALJ failed to adequately explain his evaluation of any cumulative effects.[4] As such, plaintiff's claim should be remanded to the Commissioner for proper adjudication at step three of the sequential evaluation process. Additionally, the case should be remanded for explanation of the ALJ's evaluation of the combined effect of plaintiff's impairments with respect to whether plaintiff's impairments meet or equals a listing before weighing the impact of addiction upon his alleged disability. See Walker, 889 F.2d at 50; SSR 02-01p.; McGhee v. Barnhart, 366 F. Supp. 2d 379, 389 (W.D. Va. 2005)(An ALJ must first conduct the five-step inquiry for social security disability benefits without considering the impact of alcoholism or drug addiction. . . ).

As discussed herein, the court is unable to review the ALJ's finding at step three regarding whether one of plaintiff's impairments or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. When a claimant's impairment or combination of impairments meets or equals one of the listed impairments in Appendix 1 , the claimant is deemed disabled and no further analysis is required. See 20 C.F.R. § 404.1520(4)(iii).

---

[4] Medical records from the Veteran's Hospital in Charleston from June 2005, state that "chronic and severe symptoms of PTSD and MDD interfere with the patients social and vocational functioning." (694, 712). The records further note that plaintiff "has done best when living in structured environments such as residential care facilities and has not been able to live independently for several years now. His last attempt at independent living was for a 2 week period prior to his hospitalization in 4/2005." (Tr. 693).

Additionally, plaintiff argues that the ALJ erred in his credibility analysis by citing the two-part analysis but failing to apply it. Plaintiff asserts the ALJ's decision recounts at length plaintiff's treatment for alcohol dependence and detoxifications but appears to find plaintiff not credible by observing that there was no mention in the records of the use of a cane by plaintiff nor a medical opinion that he needed one. Defendant argues that the decision was supported by substantial evidence.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

An ALJ's duty to make credibility findings about the plaintiff's statements about pain in a mental impairment case is just as important as in one alleging a physical impairment. See, e.g., Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). A reviewing court cannot determine if findings are supported by substantial evidence unless the Commissioner explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (remand required based on failure to indicate weight given to medical reports). The Fourth Circuit has recognized that it is especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

> [i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities . . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

The ALJ found at step one that plaintiff had impairments capable of producing the symptoms that he alleged and, accordingly, proceeded to step two. Plaintiff, however, complains that the ALJ failed to follow established procedures in performing this assessment and failed to provide specific explanations. The undersigned agrees.

In this case, a review of the hearing decision reveals that the ALJ found the following with respect to plaintiff's credibility after setting out the guidelines for analysis under Social Security Ruling 96-7:

> Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

> In contrast to claimant's testimony, there was no mention in the records of the use of a cane by the claimant, nor was there any medical opinion that he needed one.

(Tr. 21).

There is not substantial evidence to support the ALJ's decision. In a conclusory manner, the ALJ appeared to decide at step two of the credibility analysis that plaintiff was not credible because "[t]here was no mention in the records of the use of cane by the claimant, nor was there any medical opinion that he needed one." (Tr. 21). However, as plaintiff pointed out, plaintiff was sent to be evaluated for a cane which was issued to him at the VAMC in July 2007, due to feeling numbness in the legs and a feeling that he was about to fall. (Tr. 700). Even if the ALJ's statement was true concerning the use of the cane, the ALJ still failed to conduct a proper analysis. An ALJ's determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In this case, the ALJ made only a vague, negative reference to plaintiff's credibility after the medical evidence of record. It may well be that substantial evidence exists to support the Commissioner's decision as to the credibility of the plaintiff in the instant case. The court will not, however, speculate on a barren record devoid of the appropriate administrative analysis. As stated above, the ALJ appears to base his decision on the fact that there "was no mention in the record of the use of cane by the claimant, nor was there any medical opinion that he needed one." (Tr. 21). The ALJ failed to discuss the objective verification of plaintiff's complaints in assessing his credibility and determining his RFC. Therefore, the reasoning cited by the ALJ is not supported by substantial evidence. The case should be remanded for a proper analysis of plaintiff's credibility

including explaining and reconsidering all of the objective evidence, if any, that discredits plaintiff's testimony and symptoms and to discuss the testimony as a whole. Thus, the undersigned recommends that this case be remanded for proper consideration and explanation of findings as to the plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and Craig v. Chater, supra. The court refrains from reviewing any further contentions at this time.

## V. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. However, based on the decision submitted by the ALJ, the Court would have to speculate on the basis upon which his decision rests. We are confined to determine whether there is substantial evidence to support his decision and cannot conduct a de novo review.

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Respectfully submitted,

<u>s/Thomas E. Rogers, III</u>  
Thomas E. Rogers, III  
United States Magistrate Judge

December <u>2</u>, 2010  
Florence, South Carolina